UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROGER THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12-cv-1177-SEB-TAB |
| | ) | |
| DR. CONANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Motions for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendants' motions for summary judgment [dkt. nos. 51, 59] must be **granted,** and the plaintiff's motion to oppose entry of summary judgment [dkt. no. 69] is **denied.** The plaintiff's motion to give ruling [dkt. no. 91] is **granted.**

### I.  Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Roger Thompson ("Thompson"), an inmate in custody at all relevant times at the Plainfield Correctional Facility ("Plainfield"). The defendants are Dr. Conant, Catherine Keefer, Christina Maxwell, and Dr. Qaisin Khan.

Thompson alleges that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

The defendants seek resolution of Thompson's claims through the entry of summary judgment. Thompson has opposed the motions for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant=s favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Evidentiary materials submitted by the parties which comply with Rule 56 and Local Rule 56.1 will be considered in addressing the defendants' motions for summary judgment. Materials not in compliance with those standards will be disregarded. Defendant Maxwell's request to strike plaintiff's response in opposition to her motion for summary judgment [dkt. 78], however, is **denied.**[1]

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Thompson as the non-moving party, the following facts are undisputed for purposes of the motions for summary judgment:

---

[1] Paragraphs 18-21 of the Affidavit of Catherine Keefer are **stricken** because Ms. Keefer admits that they were included in her affidavit in error.

Thompson arrived at Plainfield on or about October 14, 2010. At all relevant times, defendant Catherine Keefer ("Ms. Keefer") was a licensed mental health counselor at Plainfield. Thompson was assigned to Ms. Keefer's case load.

Ms. Keefer first met with Thompson on or about October 19, 2010. He reported a history of anxiety and post-traumatic stress disorder caused by having received third degree burns from hot grease spilled on him when he was four years old. He said that he had taken Valium and Vicodin (for back pain) when he was in his twenties and they had been the most effective treatment for him. During the session, Thompson became increasingly angry and uncooperative, demanding Valium and Vicodin. Thompson was unreceptive to Ms. Keefer's suggestions of alternative psychiatric medications and treatment. It was Ms. Keefer's opinion that Thompson's anxiety did not impair his ability to function.

On November 9, 2010, Ms. Keefer met with Thompson at his request. Although he appeared more calm during this session, he continued to insist that he needed Vicodin and Valium. Ms. Keefer offered to have a psychiatrist evaluate Thompson, which he refused. Thompson also refused to acknowledge that he had been managing without addictive medications.

On December 8, 2010, Ms. Keefer met with Thompson for another individual therapy session. Thompson stated that he was surprised that he had managed to get along without Valium and Vicodin. He discussed his work assignment, his daily routine. He had very strong feelings of persecution and believed there was a conspiracy to keep him incarcerated. Ms. Keefer noted that Thompson's behavior was unremarkable, his mood was irritable, his reasoning, insight, and judgment were poor, and he was able to understand and refrain from harmful action.

On January 8, 2011, Ms. Keefer saw Thompson while he was in segregation. Ms. Keefer offered to conduct an individual therapy session outside of Thompson's cell, however, he

declined. Thompson was alert, fully oriented, and cooperative, but his mood was irritable. He denied any suicidal thoughts.

Defendant Dr. Conant has been Board Certified in psychiatry since 1983. Dr. Conant first saw Thompson on or about January 27, 2011, due to Thompson's complaints of anxiety. At that time, it was Dr. Conant's opinion that Thompson did not appear particularly anxious. Thompson reported that while on the streets, he took Valium. Valium is a highly-addictive benzodiazepine that can be used to treat anxiety disorders. Thompson was aware that Valium was not typically prescribed in the prison setting due to its addictive nature and potential for abuse. Dr. Conant recommended either Celexa or Trilafon for Thompson, both of which are non-addictive medications used to treat anxiety. Thompson only wanted benzodiazepines and would not consider an alternative medication.

Ms. Keefer met with Thompson again on March 4, 2011, upon his request. At that time, Thompson continued to complain about not being prescribed Valium. In an effort to help Thompson with his stress and anxiety issues, Ms. Keefer provided him with stress management materials to take with him to read. On April 15, 2011, Ms. Keefer met with Thompson for an individual therapy session. At that time, Thompson insisted that he needed Valium and Xanax to function, and he was unwilling to accept other treatment options, including therapy. He used his session time to argue his point about the medications. Ms. Keefer instructed Thompson to follow-up as needed.

Defendant Dr. Qaisar Khan has been a licensed psychologist in the State of Indiana for 13 years. Dr. Khan first saw Thompson on or about May 3, 2011. At that time, Thompson was angry and preoccupied with obtaining tranquilizers such as Valium. When Dr. Khan explained to Thompson that Valium is not prescribed in prison, he became upset, angry, loud, and refused to listen to other treatment options and strategies (including counseling and alternative medications)

to work on his anxiety. Thompson also threatened legal action as a result of not receiving Valium. Dr. Khan instructed Thompson to follow up with her as needed.

On May 17, 2011, both Dr. Khan and Ms. Keefer met with Thompson. Thompson had been sending 2-3 health requests daily, saying that he was not getting treatment for his anxiety. Thompson continued to demand only Valium for his anxiety and refused all other treatment options offered. Thompson was extremely loud and argumentative. He insisted that the only treatment that worked for him was Valium.

On July 9, 2011, Ms. Keefer met with Thompson for an individual therapy session. Thompson was on time, alert, fully oriented, and cooperative. Thompson related that all of his problems, write ups, and stress were due to his anxiety. Ms. Keefer told Thompson that based on the recent situations he had described, being written up and exchanging words with an officer, he seemed to have issues with anger, frustration, and denial. At that time, Thompson agreed to give psychiatric medications another try, so Ms. Keefer referred him to the psychiatrist.

Psychiatrist Dr. Conant saw Thompson for the second time on July 14, 2011. At that time, Thompson again stated that the only medications that had helped his anxiety were benzodiazepines such as Valium. Dr. Conant again explained to Thompson that those medications were not available in the Indiana Department of Correction ("IDOC"). Dr. Conant again offered alternative medications for his anxiety including Celexa, Thorazine, and Trilafon (also known as Perphenazine). Thompson agreed to try Trilafon. It was Dr. Conant's opinion that Thompson's anxiety did not impair his ability to function. On July 26, 2011, Dr. Conant increased Thompson's Trilafon dosage.

Ms. Keefer met with Thompson for an individual therapy session again on August 12, 2011. Thompson relayed that he had started taking Trilafon for his anxiety, that it was effective, and that he would like an increase in the dosage. Thompson admitted that he had missed a few

doses because he could not wake up in time to take them. Thompson then talked about Klonopin, which is a highly addictive benzodiazepine. He had heard from other prisoners that it was still being prescribed and he believed that he would benefit from the medication. Thompson became frustrated and threatened to stop taking Trilafon.

On August 23, 2011, Thompson was a no-show for his appointment with psychologist Dr. Khan. On August 25, 2011, Thompson was a no-show for his appointment with psychiatrist Dr. Conant.

On September 15, 2011, Dr. Khan saw Thompson per his request. At that time, Thompson would not answer Dr. Khan's questions. Thompson's only complaint was that he was not getting Xanax, the anxiety medication he wanted. He told Dr. Khan that he wanted Dr. Conant to obtain special permission to prescribe Xanax. Dr. Khan felt intimidated by the way Thompson looked at her and stood close to her to show her something. Beyond demanding particular medication, Thompson was not interested in discussing his anxiety and anger issues. Dr. Khan instructed him to follow up as needed. It is the opinion of Dr. Khan and Ms. Keefer that Thompson's anxiety did not impair his daily functioning.

By September of 2011, Thompson had stopped taking his Trilafon (Perphenazine). It is Dr. Conant's opinion that by discontinuing his medication, Thompson did not give the medication an adequate amount of time to work. It is Dr. Conant's opinion that Thompson's anxiety issues did not require the use of benzodiazepines because those medications are highly addictive and not appropriate for patients like Thompson who have a history of alcohol abuse.

At all relevant times, defendant Ms. Maxwell was a graduate student at the University of Indianapolis working toward a doctorate of clinical psychology. From October 2011 to July 2012, Ms. Maxwell was a practicum student at Plainfield working with inmates under the supervision of Dr. Khan, providing psychological evaluation and treatment.

Thompson was assigned to Ms. Maxwell's caseload in February, 2012. During their first meeting on February 1, 2012, Thompson's appearance was appropriate. He was oriented to person, place, time, and situation. He was not experiencing suicidal or homicidal ideation. Ms. Maxwell attempted to engage Thompson in the therapeutic process via the use of Socratic questioning, empathy, and rapport building. Thompson stated that he was angry that he was not prescribed the medication he believed he needed. He also stated, however, that he had been doing "fine" since he stopped taking Trilafon, the medication prescribed by Dr. Conant. He said that he was not experiencing any anxiety symptoms. Thompson did not engage in the therapeutic process. Consequently, Ms. Maxwell allowed him to vent, hoping that he would later engage in the therapeutic process to help him deal with his anxiety and anger. Thompson expressed an understanding that he may follow up with mental health staff in the future as needed.

As part of her initial interview with Thompson on February 1, 2012, Ms. Maxwell assessed his functioning using the Global Assessment of Functioning (GAF) scale. The GAF is a tool used by mental health providers to assess overall psychological, social, and occupational functioning. Thompson's GAF of 60 indicated that he was able to function with only moderate symptoms.

On March 26, 2012, Ms. Maxwell again met with Thompson for individual therapy. His appearance was appropriate, and he was oriented to person, place, time, and situation. His affect was appropriate. He reported that he was feeling anxious, so Ms. Maxwell offered him support and talked with him about stress management techniques. He was angry that he was not being prescribed Xanax. Ms. Maxwell explained to Thompson that she did not have any control over what, if any, medications were prescribed for him, and that prescribing medication is beyond the scope of practice for psychologists. Thompson affirmed that he was not experiencing either

suicidal or homicidal ideation. Ms. Maxwell made arrangements for Thompson to follow up with her in one week.

After meeting with Thompson on March 26, 2012, Ms. Maxwell consulted with Dr. Khan regarding the appropriate course of action for Thompson. Dr. Khan informed her that Thompson was not an appropriate psychiatric referral because Thompson was not willing to comply with any medication regimen other than a prescription of Xanax. In Ms. Maxwell's opinion, Thompson's functioning remained the same as it had been on February 1, with only moderate symptoms.

On April 3, 2012, Ms. Maxwell met with Thompson for therapy. He was well groomed and oriented to person, place, time, and situation. He was agitated, but was not experiencing suicidal or homicidal ideation. He expressed anger at not being prescribed tranquilizers. He was told that the IDOC did not allow tranquilizers to be prescribed. Ms. Maxwell explained that other treatment options were available to him, including other medications. Thompson refused to explore any other treatment options. Ms. Maxwell told him that he could follow up with her if he requested a meeting. Thompson stated that what was being done to him was "illegal."

On May 9, 2012, Ms. Maxwell met with Thompson again, at his request. He was well groomed and dressed. He was alert and oriented to person, place, time, and situation. He was not experiencing suicidal or homicidal ideation. He was distressed and angry about a letter he received from IDOC administrators denying his requests for tranquilizers. He asked Ms. Maxwell to give him a copy of the IDOC policy regarding the use of tranquilizers. Ms. Maxwell told him that she did not have access to the information he was requesting. Ms. Maxwell also told him again that she could not obtain tranquilizers, or any medication for him, because therapists cannot prescribe medication. Ms. Maxwell also reminded him that she had previously

offered to conduct individual therapy with him and that she was still willing to work with him in therapy if he wanted to actively and appropriately participate.

Ms. Maxwell explained in detail what participating in therapy would mean. Ms. Maxwell explained to him the techniques of Cognitive Behavioral Therapy (CBT), and explained that she would be using CBT in working with him. Ms. Maxwell offered Thompson CBT because it has repeatedly been shown to be effective with individuals who have symptoms of anxiety. Ms. Maxwell also informed him that therapy would not be successful if he did not participate in the therapeutic process. He stated that he understood, and agreed to participate appropriately in individual therapy. Ms. Maxwell scheduled a therapy session for him for one week later, which he did not attend. In her assessment, his functioning remained the same as it had been in February, meaning that he was functioning with only moderate symptoms.

In the IDOC, inmates are given codes to reflect what, if any, mental health services the inmate requires. On June 6, 2012, Thompson asked Ms. Maxwell to change his code to an "A", which would indicate the absence of any mental health needs. Ms. Maxwell consulted with her supervisor Dr. Khan about Thompson's request.

On June 27, 2012, Ms. Maxwell was scheduled to meet with Thompson for therapy. Ms. Maxwell, however, was unexpectedly unable to attend, and Thompson was scheduled to meet with her on July 5, 2012. He did not show up, and did not request any more meetings with her. Ms. Maxwell's practicum ended sometime during the week of July 16, 2012.

On July 31, 2012, psychologist Dr. Khan saw Thompson in response to his and custody's request**.** Thompson had complained that he was not being seen by mental health. During the session, Thompson was loud and argued that there were more medications that could be given to him. Dr. Khan tried to talk with Thompson and asked if he would like to see the psychiatrist. Thompson would not respond and instead continued to argue and threatened that "you cannot get

rid of me, I will continue writing health requests." Thompson accused Dr. Khan of lying on his records by saying that he did not take his medication. Thompson was not listening to Dr. Khan, so she told Thompson that the session was over. Thompson refused to leave and asked the doctor's first name. He finally left, calling Dr. Khan a "b-----" and saying "you are all a piece of sh—." He told Dr. Khan to have her lawyer ready. Thompson was then written up and placed in segregation. Dr. Khan never told Thompson that she would do nothing to help him with his anxiety or anger issues. As a psychologist, Dr. Khan's license does not allow her to prescribe medications, therefore, she had no control over what medications Thompson received. It was Dr. Khan's determination that there was little she could offer Thompson because of his refusal to engage in the process of counseling.

On August 24, 2012, Ms. Keefer evaluated Thompson while he was in segregation. Thompson was initially asleep in his bed, but when awakened he was alert and oriented. His mood was irritated and angry. Thompson continued to say that he was being denied Valium and Xanax, which he believed were the only medications that would be effective in treating his anxiety. Based on Ms. Keefer's observation and interaction with Thompson, she determined that he did not require a referral to psychiatry at that time. Ms. Keefer informed Thompson to follow up with mental health as needed.

On October 5, 2012, Ms. Keefer saw Thompson in response to his request. Thompson was again requesting tranquilizers. He spent most of the time in his session venting his frustration about being denied the specific type of medication that he wanted. Ms. Keefer offered to have Thompson evaluated by psychiatry, but he declined. Ms. Keefer also provided Thompson with written materials regarding anxiety and anxiety reducing techniques. Upon leaving the session, Thompson threatened Ms. Keefer by saying "you better get a good lawyer." Ms. Keefer

wrote in the chart that she would not see Thompson again individually without custody staff nearby because of Thompson's temper and verbal abuse.

As a mental health counselor, Ms. Keefer's license does not allow her to prescribe medications. Therefore, she had no control over what medications Thompson received. It is Ms. Keefer's opinion that Thompson's anxiety never impaired his ability to function. In Ms. Keefer's experience, it was nearly impossible to discuss with Thompson his anxiety and anger issues because of his refusals to do so and his preoccupation with demanding specific medications.

### B. Analysis

At all times relevant to Thompson's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment=s proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition, and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (*overruled on other grounds in Hill v. Tangherlini,* No. 12-3447, 2013 WL 3942935 (7th Cir. Aug. 1, 2013)).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention.@ *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendants argue that Thompson did not have an objectively serious medical condition. They contend that Thompson has produced no evidence showing that his anxiety impaired his ability to function. For most of the time relevant to this action, Thompson did not take any medication for his anxiety and his medical providers were of the opinion that his symptoms were only moderate. Thompson argues that his anxiety condition was serious and required treatment. For purposes of this motion, the Court finds that there is a genuine issue of material fact as to whether Thompson had a serious medical need. Therefore, the Court shall consider the second element of Thompson's claim.

"To show deliberate indifference, [Thompson] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it."@ *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680 F.3d at 1018-1019 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted).

Thompson argues that the defendants knew that the treatment they offered was not adequate or effective but refused to change it. Specifically, he disputes Dr. Conant's determination that the medication Thompson requested was highly addictive, alleging that he had taken the medication for years in the past with no signs of addiction or abuse. The pivotal issue

in this case is whether the defendants were deliberately indifferent by not providing the particular medications that Thompson requested. The only defendant who had the licensing authority to prescribe medications was the psychiatrist, Dr. Conant.

In response to Thompson's complaints of anxiety, Dr. Conant used his medical judgment to offer Thompson certain non-addictive medications. It was Dr. Conant's professional opinion that the Valium requested by Thompson was not appropriate for his condition. Thompson initially refused to take another medication, Trilafon, but later agreed to try it. Thompson began taking Trilafon in mid-July of 2011, and on July 26, 2011, Dr. Conant increased the dosage. Thompson had stopped taking the Trilafon by September of 2011. It is Dr. Conant's opinion that Thompson did not take the Trilafon long enough to allow it be effective. There is no evidence of record showing that Dr. Conant's prescribed treatment was a "substantial departure from accepted professional judgment," *King,* 680 F.3d at 1018-1019, or that prescribing Valium was necessary for Thompson's condition.

It is well-settled that while incarcerated, an inmate is not entitled to the best possible care or to receive a particular treatment of his choice. *See Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). It is clear from the entire record that Thompson disagreed with Dr. Conant's decision not to prescribe Valium or Xanax, but that does not mean that Dr. Conant acted with deliberate indifference. *See Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003) (mere disagreement with medical professionals about one's needs does not state a claim for deliberate indifference). Dr. Conant is entitled to summary judgment.

With regard to his claim against psychologist Dr. Khan, Thompson argues that he did not refuse counseling and that he requested and attended therapy on numerous occasions. He alleges that he tried to tell Dr. Khan how he was feeling and about how Trilafon made him feel even

worse, but she only told him there was nothing she could do for him. He alleges that Dr. Khan did not believe him.

The record shows that Dr. Khan first met with Thompson on May 3, 2011, at which time he was loud and refused to listen to any treatment option other than Valium. He threatened legal action because Dr. Khan told him that Valium was not prescribed in prison. A couple of weeks later when Dr. Khan saw Thompson, his behavior was much the same -- loud, argumentative, and focused on obtaining Valium. On August 23, 2011, Thompson did not show up for his appointment with Dr. Khan. On September 15, 2011, Dr. Khan saw Thompson but Thompson would not answer her questions. At this appointment, he complained that he was not receiving Xanax. Thompson acted in an intimidating manner and would not discuss his anxiety or anger issues. The final time Dr. Khan saw Thompson in July of 2012, Thompson called her vulgar names and threatened litigation. As a result, Thompson was written up and placed in segregation. None of these circumstances point to any deliberate indifference on the part of Dr. Khan. Her attempts to provide counseling were met with abrasive and abusive behavior. Thompson's frustration at not being able to obtain Valium or Xanax does not render Dr. Khan deliberately indifferent. Dr. Khan did not ignore any serious medical need. There is no admissible evidence supporting Thompson's allegation that Dr. Khan told him she would not help him. Dr. Khan is entitled to summary judgment.

As to his claim against Ms. Keefer, Thompson argues that he informed her that he was not doing well but she did not seem to care. He alleges that he showed Ms. Keefer records of a "new illness" that he had developed due to anxiety and stress. He alleges that he told Ms. Keefer that he needed medication because therapy alone was not helping. He reported that the medications offered by Dr. Conant only made his anxiety worse. He argues that Ms. Keefer did have some control over what medications he received because she observed him not doing well

and had the responsibility to act. The admissible evidence shows otherwise. That evidence reflects that Ms. Keefer was a mental health counselor and did not, in fact, have the authority to prescribe medications or to recommend any particular medication to a psychiatrist. Thompson's preoccupation with trying to obtain specific medications prevented Ms. Keefer from engaging Thompson in effective therapeutic counseling. There is no evidence that Ms. Keefer ignored Thompson's complaints or refused to see him when he requested an appointment. There is no evidence showing that Ms. Keefer was aware of a serious medical need but ignored it or failed to attempt to provide appropriate counseling. Ms. Keefer is entitled to summary judgment.

With regard to his claim against clinical psychology graduate student Ms. Maxwell, Thompson argues that he told Ms. Maxwell what medications had been effective for him in the past but Dr. Conant refused to prescribe them for him. He asserts that Ms. Maxwell told him that under IDOC policy, tranquilizers such as Xanax were not to be prescribed, but she declined to give him a copy of the policy. He argues that she was aware of his suffering and that the treatment offered was not effective and that, therefore, she was deliberately indifferent to his serious medical needs.

Ms. Maxwell met with Thompson a number of times from February 1, 2012, until June of 2012. During the time Ms. Maxwell worked with Thompson, she offered him CBT, which has been used as an effective treatment for individuals with anxiety. It was her opinion that Thompson suffered more from symptoms of anger at not being prescribed Valium than anxiety. When Thompson raised concerns about his treatment, she discussed them with Dr. Khan, her supervisor, but she informed Thompson on numerous occasions that she was not licensed to prescribe medication. At each appointment, Ms. Maxwell assessed Thompson's risk of suicidal or homicidal ideation, and on each occasion, he denied experiencing such thoughts. It was Ms. Maxell's observation based on her education and training that Thompson's anxiety never

presented a serious risk to his own mental or physical health, or a serious risk to others. She evaluated him using the GAF scale and determined that Thompson had only moderate symptoms. Contrary to his contentions, Thompson has presented no evidence of Ms. Maxwell having no concern for his welfare. Rather, the record shows that she was available to provide him with appropriate therapy, but she could not provide what he apparently wanted most, Valium. On June 6, 2012, Thompson asked Ms. Maxwell to change his "code" so that it would reflect his belief that he had no need for mental health treatment. Ms. Maxwell is entitled to summary judgment.

A court examines the totality of an inmate's medical care when determining whether defendants have been deliberately indifferent to his serious medical needs. *Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000). Over a period of two years, Thompson was seen by mental health therapists, a psychologist, and a psychiatrist on a regular basis in an effort to treat his complaints of anxiety. Thompson is "entitled to reasonable measures to meet a substantial risk of serious harm." *Id.* That is what he received.

Even if Thompson had shown negligence or gross negligence on the part of any of the defendants, which he has not done, that would not be sufficient to survive summary judgment as to his claims of deliberate indifference. *See Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008) ("negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense"). In addition, there is no evidence that the medical providers' actions fell below the applicable standards of care.  In sum, all of the defendants are entitled to summary judgment in their favor.

## IV.  Conclusion

Thompson's motion to give ruling [dkt. no 91] is **granted.** Thompson has not identified a genuine issue of material fact as to his claims that the defendants were deliberately indifferent to his serious medical needs. Therefore, the defendants' motions for summary judgment [dkt. nos. 51, 59] must be **granted.** The plaintiff's motion to oppose entry of summary judgment [dkt. no. 69] is **denied.**  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:  __08/26/2013_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

Roger Thompson
#926378
Plainfield Correctional Facility
Inmate Mail/Parcels
727 Moon Road
Plainfield, IN 46168